Scott T. Evans, 6218
Tyler V. Snow, 12668
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone:  (801) 323-5000
scott.evans@chrisjen.com
tyler.snow@chrisjen.com
*Attorneys for Defendant Federal Cartridge Company*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JACOB SEAN BARBEN,<br><br>            Plaintiff,<br><br>v.<br><br>BERETTA USA CORP., a Delaware Corporation; SPORTSMAN'S WAREHOUSE, INC., a Utah Corporation; and FEDERAL CARTRIDGE COMPANY, a Minnesota Corporation,<br><br>            Defendants. | **FEDERAL CARTRIDGE COMPANY'S MOTION TO EXCLUDE TOM ROSTER**<br><br>Case No. 1:16-cv-00094-DON<br><br>Judge David Nuffer |

## FEDERAL CARTRIDGE COMPANY'S
## MOTION TO EXCLUDE TOM ROSTER

Pursuant to Federal Rule of Evidence 702, Defendant Federal Cartridge Company ("Federal Cartridge"), by and through counsel, respectfully moves to exclude Plaintiff's expert Tom Roster from testifying at trial that the shotgun barrel burst was caused by a tube that somehow separated from a round of Federal Cartridge's H121 6 shotgun shell ammunition.  Mr.

Roster's theory could have been tested by Plaintiff, and yet it was not. It is therefore not reliable and subject to exclusion.

---

### FEDERAL CARTRIDGE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TOM ROSTER

---

### <u>INTRODUCTION</u>

Mr. Roster gives as his opinion that the subject accident was caused by a shotgun barrel obstruction. He says that the obstruction was specifically a Federal Cartridge H121 6 shotgun shell tube that somehow separated from the round fired immediately prior to the incident shot, and lodged in the barrel. (Federal Cartridge contends that the obstruction was rather a 20-gauge shell that had mistakenly been inserted by plaintiff into his 12-gauge shotgun.)

However, Mr. Roster failed to test his theory, and his testimony is accordingly not reliable and not admissible. Mr. Roster even acknowledged that the "definitive[]" way to "get to the bottom" of what happened is to reconstruct what he thinks happened, and to see if the incident can be replicated. When questioned, however, Mr. Roster admitted that he had not done any such testing, giving as the explanation, "[n]o one's authorized me to do that or recommended I do it…." Any such opinions from Mr. Roster are therefore untested theories and are not reliable. Mr. Roster should thus be prohibited from opining that Federal Cartridge's H121 6 ammunition was the cause of the accident.

//

//

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff generally alleges that on 30 October 2014, he went hunting with three of his co-workers near Tremonton, Utah.  During the hunt he fired a round of Federal Cartridge H121 6 ammunition from a Beretta Silver Pigeon II shotgun.  When he fired a second round of the ammunition, plaintiff felt an unnatural recoil in the shotgun, and he felt like his hand had "been slapped very hard."  When plaintiff looked at his hand, he observed an injury to his hand, and his thumb was barely attached.[1]

Plaintiff's sole liability expert, Tom Roster, opines that the accident was caused by a barrel obstruction, specifically opining that the hull (tube) from the first shot somehow had separated from the head and became lodged in the barrel.  The separated tube, he speculates, served as an obstruction for the second round fired, resulting in the accident.[2]

Mr. Roster acknowledged that he did not test his theory, even though he testified that the definitive way to get to the bottom of what happened would be to test his theory:

> Q. Did you -- did you do any testing to try to replicate this accident involving Federal ammunition?
>
> A. I have not. But you know what, I would really -- if you want to definitively get to the bottom of this, that's the way to get to it is you reconstruct to the best of your ability the firearm that was involved, the ammunition that was involved, the believed obstruction that was involved. You put the thing in a destructive box, you pull the trigger, and see what happens.
>
> Q. But you haven't done that in this case?
>
> A. I have not.

---

[1] *See* Doc. No. 2-2, 2d Amend. Compl., p. 3, ¶¶ 18-22.
[2] *See* Tom Roster Report, pp. 11-18, attached as **Exhibit 1**; *see* Tom Roster Depo. 88:18-92:22, attached as **Exhibit 2**.

Q. Why not?

A. No one's authorized me to do that or recommended I do it or --[3]

While Mr. Roster did not subject his theory to any actual testing, Federal Cartridge's expert did conduct such testing, and the result was completely harmless.  Mr. Rodgers stated with respect to the results of his testing:

> Using a Beretta Silver Pigeon I exemplar, I conducted an Obstruction Test, using a separated plastic hull. The hull had to be pounded into the barrel past the forcing cone and mechanical pressure exerted to get the hull deep enough in the barrel to allow another round to chamber behind it. A H121 round was then fired into the plastic hull. The first test resulted in the majority of the plastic hull ironing out on the inside of the barrel. A small portion of the hull fired out the muzzle and was recovered 50 yards downrange. The payload passed harmlessly through the hull leaving zero damage or bulge to the barrel.
>
> I removed the ironed out hull and inserted another hull for the second test. The second round resulted in the payload striking the hull and firing it out of the barrel. The hull was recovered at the end of a 100 yard ballistic alley. Again, there was no firearm damage or bulge.[4]

Not only did Mr. Roster not test his theory itself, Mr. Roster did not do any forensic testing to try to link the alleged subject separated tube to the shotgun plaintiff was using on the day of the accident:

Q. Have you done any forensic testing to try to link that [tube] to Mr. Barben's gun?

A. No.

Q. Why not?

---

[3] Ex. 2, Roster Depo. 119:10-25.
[4] Rodgers Report, p. 3, attached as **Exhibit 3**.

A. No one -- no one asked me to run such a test, and I wouldn't -- I wouldn't have any facilities to do such a test myself.[5]

Mr. Roster testified that he is not even aware of any barrel obstruction bursts that involved a separated tube that was in the barrel:

Q. Okay. So but of the ones where there was an actual burst of the barrel, have you investigated any where -- where it was your belief that the obstruction was a tube that had separated in some way?

A. Not, not recently, no.

Q. Or ever?

* * *

A. Or ever, or ever. Usually -- usually on the tube things I've been made aware of, they have discovered it and got it removed before it could cause a bulge or a burst.

Q. And are you aware of any [] where the tube was the obstruction and that caused a burst?

A. I can't say I have, no.[6]

## <u>ARGUMENT</u>

### I.   The Rule 702 Standard.

"Under Federal Rule of Evidence 702, district courts must assess whether a witness is qualified 'by knowledge, skill, experience, training, or education' to offer expert testimony."[7] "To qualify as an expert, the witness must possess such 'knowledge, skill, experience, training, or education' in the particular field so that it appears that his or her opinion rests on a substantial

---

[5] Ex. 2, Roster Depo. 164:8-14.
[6] Ex. 2, Roster Depo. 180:25-181:15.
[7] *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 662 (10th Cir. 2013).

foundation and tends to aid the trier of fact in its search for the truth."[8]  If a proposed expert witness is found to have sufficient knowledge, skill, experience, training, or education, then "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[9]  "One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts."[10]  Rule 702's reliability requirement serves the important function of "mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[11]  Put another way, expert evidence must meet "exacting standards of reliability" in order to be admitted.[12]  Consequently, the district court judge has a duty to "'ensure that any and all scientific testimony or evidence is not only relevant, but reliable."[13]  "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible."[14]

"No one seriously questions the proposition that so-called 'expert witnesses' can add an aura of authority to any asserted opinion."[15]  The Supreme Court recognized in *Daubert* the intricate role of Rule 403 in an expert testimony admissibility analysis when it noted that expert

---

[8] *Rivera v. Volvo Cars of N. Am., LLC*, No. 13-00397 KG/KBM, 2015 U.S. Dist. LEXIS 179696, at *4 (D.N.M. June 25, 2015).

[9] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).

[10] *Rivera*, 2015 U.S. Dist. LEXIS 179696, at *5 (citing *Daubert*, 509 U.S. at 591).

[11] *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

[12] *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

[13] *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883 (10th Cir. 2005).

[14] *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).

[15] CHARLES R. RICHEY, PROPOSALS TO ELIMINATE THE PREJUDICIAL EFFECT OF THE USE OF THE WORD "EXPERT" UNDER THE FEDERAL RULES OF EVIDENCE IN CIVIL AND CRIMINAL JURY TRIALS, 154 F.R.D. 537, 545 (1994).

testimony could be "both powerful and quite misleading because of the difficulty in evaluating it."[16]  For these reasons, the Court must ensure that experts are qualified to offer opinions and that the methodologies experts use to support their opinions are reliable and should exclude opinions that are not based in proper methodology.

As discussed below, Mr. Roster did not test his opinions, and the best testimony he seems able to offer is that it was a *possibility*, which is not helpful for the jury and not admissible evidence.

## II.    Mr. Roster's Opinion as to the Alleged Separated Tube as the Cause of the Accident is Not Reliable.

Mr. Roster's opinion is not reliable. To be admissible, an opinion must be derived from exacting standards of reliability.  The specifications of Rule 702 "impose a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable."[17]  Plaintiff, as the proponent of Mr. Roster's testimony, "must show that the witness has sufficient expertise to choose and apply a methodology [and] that the methodology was reliable."[18]

When assessing the reliability of an expert's opinion, a key issue is whether the expert's theory can be, and has been, tested.  "[A] district court may properly exclude [expert] testimony" when the opinion evidence "is connected to existing data only by the *ipse dixit* of the expert"

---

[16] *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1301 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 595); *see also id.* (recognizing that the jury "would likely be even less equipped than the judge to make reliability and relevance determinations and more likely than the judge to be awestruck by the expert's mystique.").

[17] *United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000) (quoting *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999), cert. denied, 528 U.S. 1098 (2000)).

[18] *Pritchett v. I-Flow Corp.*, Civ. Action No. 09-cv-02433, 2012 U.S. Dist. LEXIS 46302, *8 (D. Colo. March 28, 2012).

such that "there is simply too great an analytical gap between the data and the opinion offered."[19] This analytical gap exists when an expert report fails to include the expert's attempts to test his theory, as a "key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested."[20] "The Tenth Circuit has held that, although testing is not always required to satisfy the reliability threshold of Rule 702, it is particularly important where the basis for the expert opinion is subject to debate."[21]   In such a case, "[w]ithout testing, [the expert's] conclusion is only a theory with inadequate support," and it must be excluded.[22]

Here, Mr. Roster is not aware of a situation where a barrel burst due to a separated hull and did not engage in any analysis or test to confirm his theory.  He admitted that the definitive way to get to the bottom of what happened is to reconstruct what is thought to have caused the incident, and see if the incident is then replicated.  Federal Cartridge's expert Steve Rodgers did conduct such testing, and proved Mr. Roster's theory incorrect.  Without any scientific evidence or testing to confirm his theory, Mr. Roster's opinions amount to nothing more than unproven, unreliable speculation.  His opinions about a separated tube being the cause of the subject shotgun barrel burst are thus not admissible.

//

//

---

[19] *Heer v. Costco Wholesale Corp.*, 589 Fed. App'x 854, 861 (10th Cir. 2014) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[20] *Daubert*, 509 U.S. at 593.
[21] *Smith v. Terumo Cardiovascular Sys. Corp.*, 2:12-cv-00998-DN, 2017 U.S. Dist. LEXIS 124866, at *12 (D. Utah Aug. 7, 2017) (citations omitted).
[22] *Id.* at *13.

**CONCLUSION**

Mr. Roster's analysis is so lacking in intellectual rigor that it must be excluded; his failure to test his theories shows that they are only theories with inadequate support. Mr. Roster, therefore, should be precluded from testifying concerning a separated shell being the cause of the subject shotgun barrel burst.

DATED this 10th day of October, 2017.

CHRISTENSEN & JENSEN, P.C.

/s/ Tyler V. Snow
Scott T. Evans
Tyler V. Snow
*Attorneys for Defendant Federal Cartridge Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October, 2017 I electronically filed the foregoing **FEDERAL CARTRIDGE COMPANY'S MOTION TO EXCLUDE TOM ROSTER** with the Clerk of the Court using the CM/ECF efiling system, which sent notification of such filing to the following:

Dustin Lance
Jessica A. Andrew
LANCE ANDREW, P.C.
15 West South Temple, Suite 1650
Salt Lake City, Utah 84101
dlance@lanceandrewlaw.com
jandrew@lanceandrewlaw.com
*Attorneys for Plaintiff*

/s/ Bengta M. Hoffman